# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harry Marvin, Owner of Marv's : 
Service Center, and Harry William : 
Marvin, Jr., : 
                    Appellants : 
                       : 
              v. : No. 1218 C.D. 2018
                       : SUBMITTED: December 7, 2020
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Motor Vehicles : 


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
                HONORABLE J. ANDREW CROMPTON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

## MEMORANDUM OPINION BY
## SENIOR JUDGE LEADBETTER           FILED: January 26, 2021

         Harry Marvin, Sr., owner of Marv's Service Center, appeals from the order of the Court of Common Pleas of Susquehanna County which, in pertinent part, modified a suspension imposed by the Department of Transportation, Bureau of Motor Vehicles. The Department had suspended Marv's Service Center's certificate of appointment as an official safety inspection station for a period of one year for a charge of improper recordkeeping (second violation). After a hearing, the trial court substituted a suspension of two months for failure to provide a work order/receipt and/or failure to list required information on a work order (first

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

violation)—a regulatory violation different from the one cited by the Bureau.[2] Marvin, Sr., argues that the trial court lacked authority to impose a suspension for a violation different from the one administratively charged by the Bureau. We agree and therefore reverse.

The relevant procedural and factual history is not disputed and may be summarized briefly as follows. On April 14, 2014, Warren Cosner, a Quality Assurance Officer for the Department and a Certified Safety Inspector, made an unscheduled visit to Marv's Service Center and observed a 2000 Nissan with a newly issued safety inspection sticker. Cosner asked to conduct a reinspection of the 2000 Nissan, but it was driven away before he could conduct such inspection. Nevertheless, Cosner filed an investigative report that indicated that the work order for the vehicle was missing tire wear readings and brake wear readings, which he believed was a violation. At the hearing, Cosner could not identify where the regulations required that tire and brake reading information be on a work order given to a customer, but testified that it was a requirement.

Cosner later testified that the information concerning brake and tire readings was on the MV-431 form, which is filled out by the inspection mechanic with that information, along with other information concerning the identification and

---

[2] Harry William Marvin, Jr., the inspection mechanic who performed the inspection at issue, is also listed in the caption. Initially, appeals were brought in the trial court to both the suspension of the certificate of appointment of Marv's Service Center and Marvin, Jr.'s certification as an inspection mechanic. However, early in the proceeding below, the trial court amended the caption to reflect that Marvin, Sr., owner of Marv's Service Center, was the sole petitioner. (Notes of Testimony "N.T." May 16, 2016 at 2-3.)

This case is one of several appeals between the parties. (*See* Dkt. Nos. 884 C.D. 2018, 885 C.D. 2018, 1218 C.D. 2018, 1231 C.D. 2018, and 1235 C.D. 2018.) The Bureau withdrew two appeals, at Docket Numbers 1231 C.D. 2018 and 1235 C.D. 2018, which had been consolidated with the one at issue. The two other cross-appeals, Docket Numbers 884 C.D. 2018 and 885 C.D. 2018, have been separately consolidated, but are not before us here.

condition of the vehicle. The MV-431 was complete for the 2000 Nissan except with regard to the work order number for the vehicle, which was not present. The customer is not given a copy of the MV-431.

Marvin, Sr., called a witness who was qualified as an expert on inspections and mechanical issues. The expert asserted that there was no regulation requiring an inspection station to give a customer a work order for a vehicle that did not require work or for an inspection. Harry William Marvin, Jr., the inspection mechanic who conducted the safety inspection on the 2000 Nissan, testified that he prepared the receipt (i.e., work order) for the 2000 Nissan in front of Cosner when he asked for it. Marvin, Jr., testified that he did not prepare a work order for the customer because he was a member of Marvin, Sr.'s family and was not charged for the work, and he wished to avoid paying sales tax on money he did not receive.[3] Upon re-cross, Marvin, Jr., was presented for impeachment purposes with receipts unrelated to this case where brake and tire readings were not recorded. Marvin, Jr., also denied that there was a requirement for a work order because no work was done and the customer, a family member, was not charged. Marvin, Sr., testified that there was no reason to give a receipt for the inspection because the station had the records.

By notice dated October 7, 2014, the Bureau notified Marvin, Sr., that his certificate of appointment was suspended for one year for improper recordkeeping in the inspection of the 2000 Nissan. Marvin, Sr., filed a timely statutory appeal in the trial court. The trial court held a *de novo* hearing on the merits of the appeal over three days, May 16, 2016, February 6, 2017, and December 18,

---

[3] The receipt/work order presented to Cosner appears not to have been created for nor given to the customer. The owner of the Nissan testified that he is Marvin, Sr.'s brother-in-law.

2017.[4] After Marvin, Sr., rested, the parties briefed the trial court on the issue of whether Marvin, Jr., was required to provide the owner of the 2000 Nissan with a written work order or receipt containing tire and brake readings. On July 30, 2018, the trial court entered its order modifying the suspension as set forth above. Both Marvin, Sr., and the Bureau appealed. The Bureau eventually withdrew its appeals.

On appeal, Marvin, Sr., raises the following issue: whether the trial court had the authority to substitute the violation of failure to provide a work order/receipt and/or failure to list required information on a work order in place of improper recordkeeping, a violation which the trial court found Marvin, Sr., had not committed.

Marvin, Sr., argues that the trial court did not have authority to substitute a different violation in place of the one charged by the Bureau. We agree. The Vehicle Code requires an inspection station to keep records, 75 Pa.C.S. § 4731[5] (relating to records of inspections and certificates issued). Regulations promulgated by the Department require the owner of an inspection station to "keep inspection records and required work orders available for examination and audit by the inspection station supervisor and other authorized persons," 67 Pa. Code § 175.29(a)(4), and separately require, as a matter of "customer relations," that the

_____

[4] Evidence concerning other alleged violations was heard, but we limit our recitation to the facts relevant to the portion of the case appealed here.

[5] Section 4731 of the Vehicle Code provides as follows:

> A record shall be made of every inspection and every certificate issued and the record shall be forwarded to the department in the manner and at the time the department shall specify by regulation. An official inspection station and its records shall be open for inspection by any police officer, authorized department employee or any designee of the department.

75 Pa.C.S. § 4731.

4

"vehicle owner shall be informed in writing on the receipt or work order . . . . The brake and tire readings shall be indicated in writing on the receipt or work order," 67 Pa. Code § 175.29(f)(4). The regulations provide for separate penalties for the violation of "improper recordkeeping" and "failure to give a written receipt or work order to customer, or to list required information on work order":

> § 175.51. Cause of Suspension.
>
> (a) Schedule. The complete operation of an official inspection station is the responsibility of the owner. Failure to comply with the appropriate provisions of 75 Pa.C.S. (relating to Vehicle Code) will be considered sufficient cause for suspension of inspection privileges . . . .
>
> *Type of Violation . . . .*
>
> > (2) *Category 2*
> >
> > > (ii) Improper Recordkeeping . . . .
> >
> > . . . .
> >
> > (4) *Category 4*
> >
> > > (ix) Failure to give a written receipt or work order to customer, or to list required information on work order . . . .

67 Pa. Code § 175.51(a)(1). The regulations differentiate the violations by type and by penalty prescribed for first and subsequent offenses.

In *Department of Transportation, Bureau of Motor Vehicles v. Wright Oldsmobile Honda*, 569 A.2d 411, 412 (Pa. Cmwlth. 1990), inspection stickers issued to one inspection station (Wright Oldsmobile) were not recorded in that station's record books, but were instead used and recorded by another separate but affiliated inspection station (Wright Honda) with a different certificate of

appointment, both of which kept their inspection stickers in the same safe. Wright Oldsmobile, to which the inspection stickers were issued, was cited for "careless recordkeeping." *Id.* Wright Oldsmobile appealed its suspension and a *de novo* hearing was held by a trial court. *Id.* At the hearing, the inspector who conducted the inspection for the Department testified that the machine printouts for all stickers actually existed, that all of the stickers were accounted for, and that the only records which the regulations mandated were the machine printouts. *Id.* The inspector testified that the record books kept by the inspection station were not required. *Id.* The trial court in *Wright* sustained the inspection station's appeal and vacated the suspension imposed by the Department. *Id.*

In *Wright*, the Department argued *inter alia* that the trial court failed to consider a different provision, 75 Pa.C.S. § 4730(b), which prohibited the unauthorized use of certificates of inspection, which included the furnishing, loaning, sale, or giving of such certificates to any other inspection station. 569 A.2d at 413. This Court rejected this argument: "[the Department] did not charge Wright [Oldsmobile] with violating this section, and as a result, no penalty can be imposed under this section." *Id.*

This case is analogous. Marv's Service Center was charged with improper recordkeeping and the trial court noted in its July 27, 2018, order dismissing and modifying the charge that the Bureau had submitted a list of violations by Marv's Service Center (Commonwealth's Exhibit 1, Certification and Attestation of Bureau Records, Sub-exhibit 9) and actions taken for the violations and that no violation was listed for "failure to list required information on a work order." [Order at 12 n.6, *Marv's Serv. Ctr. v. Dep't of Transp.*, (Susquehanna C.C.P., Dkt. Nos. 2014-1232 and 2014-1400, filed July 27, 2018)].

6

The trial court, rather than simply sustaining the appeal and dismissing the charge actually brought by the Bureau, instead substituted a violation consistent with the evidence presented. In doing so, the trial court—correctly in the Department's estimation—relied upon cases of our Supreme Court and this Court holding that a trial court may modify a *sanction* where it makes different findings of fact and conclusions of law. *See Dep't of Transp., Bureau of Traffic Safety v. Kobaly*, 384 A.2d 1213, 1215 (Pa. 1978) and *McCarthy v. Dep't of Transp.*, 7 A.3d 346, 354 (Pa. Cmwlth. 2010). We find these cases to be inapposite.

In *Kobaly*, the trial court upheld the Department's finding that an inspection mechanic had illegally furnished inspection stickers but vacated the Department's finding that he had engaged in fraudulent recordkeeping, with the effect of reducing the suspension from one year to six months. *Kobaly*, 384 A.2d at 1214. In *McCarthy*, the trial court modified the penalty for fraudulent recordkeeping from a suspension of one year to the assignment of points. *McCarthy*, 7 A.3d at 350. In those cases, reaching different findings of fact and conclusions of law permitted the trial court to vacate a violation found by the Department and commensurately reduce a penalty for another violation *actually charged* by the Department and upheld, *Kobaly*, or to impose a modified sanction for the *same violation* charged, *McCarthy*. However, those cases do not hold that a trial court may substitute a wholly different charge for one that was brought by the Department, and *Wright Oldsmobile* precludes such substitution.

The Bureau argues that Marvin, Sr., has waived the issue of whether he was provided adequate notice of the violation. The issue of notice is different from that of the trial court's authority to impose, *sua sponte*, a penalty for an uncharged violation. Until the trial court did so in its order, there would seem to have been no

7

opportunity or need for Marvin, Sr., to have raised the issues of either notice or the substitution.

The Bureau finally argues that Marv's Service Center "never argued that a failure to comply with the work order requirements was not within the ambit of the term 'improper recordkeeping,'" (Brief at p.23), and states that Marvin, Sr., proposed to stipulate: "There's improper recordkeeping by not having the work order reflecting the brake—on it. That is the only recordkeeping issue . . . ." (N.T. December 18, 2017 at 3-4.) The trial court accepted the stipulation. In this regard, it is not clear whether the Bureau is reasserting the waiver argument rejected above or is suggesting that the work order violation amounts to the actual offense of improper recordkeeping or is a lesser included offense of improper recordkeeping.[6] Assuming the latter, however, while parties can stipulate to facts, they cannot stipulate to incorrect legal principles. Even if we were to take the above statement as a concession that Marv's Service Center's counsel believed the substituted violation to be a lesser included offense within the one charged, and we do not read the statement so broadly, that would not make it so. The categories and sub-categories of offenses listed in the regulation are distinct and specific and, in addition, are structured in a way that belies the notion that violations in a particular category are lesser included violations of one in a different category, let alone that a

---

[6] This Court has held that a trial court might modify a violation charged by the Department to a "lesser included offense." *Dep't of Transp., Bureau of Motor Vehicles v. Tutt*, 576 A.2d 1186, 1189 (Pa. Cmwlth. 1990) (careless recordkeeping is lesser included offense of improper recordkeeping); *Dep't of Transp., Bureau of Driver Licensing v. May*, 528 A.2d 708, 710 (Pa. Cmwlth. 1987) (improper recordkeeping is lesser included offense of fraudulent recordkeeping). These cases, too, are inapposite as the work order violation is not a lesser included offense of the improper recordkeeping charge.

violation listed in Category 4 is simply an example of a Category 2 violation.[7]  Here, as noted above, the evidence showed that the brake and tire readings were properly recorded in the MV-431 record kept by Marv's Service Center, and the failure to note them on the work order was simply not a part of the obligation to maintain accurate records.

In light of the foregoing, the relevant portion of the order of the trial court is reversed.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[7] Even if we were to interpret the Department's argument to be that its evidence actually proved improper recordkeeping, the trial court found to the contrary and, in the absence of a cross-appeal raising such an issue, it is not before us.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harry Marvin, Owner of Marv's    :
Service Center, and Harry William   :
Marvin, Jr.,    :
           Appellants   :
    :
         v.    :   No. 1218 C.D. 2018
    :
Commonwealth of Pennsylvania,   :
Department of Transportation,    :
Bureau of Motor Vehicles    :

# **O R D E R**

AND NOW, this 26th day of January, 2021, the order of the Court of Common Pleas of Susquehanna County in the above-captioned matter is REVERSED with regard to the imposition of a suspension for a first-time violation of failure to provide a work order/receipt and/or failure to list required information on a work order.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge